1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Rolling Frito-Lay Sales LP,            )    CV 11-1361-PHX-FJM
                                            )
10                  Plaintiff,              )    **ORDER**
                                            )
11   vs.                                    )
                                            )
12                                          )
     Rebecca Stover; David Montiel dba On-  )
13   Auk-Mor Trade Center; Auk Mor; Salt    )
     River Pima-Maricopa Indian Community   )
14   Court,                                 )
                                            )
15                  Defendants.             )
                                            )
16   _____)

17

18        The court has before it defendant Stover's motion to dismiss for lack of jurisdiction

19   (doc. 13), plaintiff's combined response to Stover's motion to dismiss and Stover's cross

20   motion for summary judgment (doc. 21), and Stover's reply to plaintiff's combined response

21   to the motion to dismiss and  Stover's cross motion for summary judgment  (doc. 22).  We

22   also have before us plaintiff's motion for summary judgment (doc. 7), Stover's response and

23   cross-motion for summary judgment (doc. 14), and plaintiff's reply (doc. 18).  Next, we have

24   plaintiff's motion to strike Stover's response to plaintiff's statement of facts in support of its

25   motion for summary judgment (doc. 17), and Stover's notice of errata and motion to amend

26   her response to plaintiff's statement of facts (doc. 20).  Finally, we have defendants Montiel

27   and the On-Auk-Mor Trade Center's motion to dismiss for lack of jurisdiction (doc. 23),

28   plaintiff's response (doc. 24), and Montiel and On-Auk-Mor's reply (doc. 25).  It does not

1  appear that the Salt River Pima-Maricopa Indian Community Court has been served, and it
2  has not appeared in these proceedings.

3  **I. Background**

4  The facts are undisputed.  The On-Auk-Mor Trade Center ("On-Auk-Mor") is owned
5  by defendant Montiel and located on the Salt River Pima-Maricopa Indian Reservation.
6  Montiel is a tribal member.  Plaintiff, a non-Indian limited partnership, provides products to
7  On-Auk-Mor for sale.  Defendant Rebecca Stover, a non-Indian, visited On-Auk-Mor,
8  slipped on one of plaintiff's boxes, fell, and was injured.

9  Stover filed an action in the Superior Court of Arizona in Maricopa County against
10  plaintiff, Montiel, and On-Auk-Mor on May 14, 2010.  In August 2010, the Superior Court
11  dismissed all claims against Montiel and On-Auk-Mor because, as tribal members, they were
12  not subject to state jurisdiction.  Much later, in April 2011, the Superior Court dismissed
13  Stover's claim against plaintiff without prejudice for lack of prosecution.  It is unclear why
14  Stover abandoned her claim against plaintiff in a court which clearly had jurisdiction.  Stover
15  brought an action in tribal court against plaintiff, where only special tribal advocates are
16  permitted to appear.

17  Plaintiff filed this action, seeking, among other things, to enjoin Stover from
18  proceeding against plaintiff in tribal court.

19  **II. Stover's Motion to Dismiss**

20  Stover moves to dismiss for lack of jurisdiction and contends that the tribe has
21  jurisdiction over her claims against plaintiff.  She also contends that principles of comity
22  require us to dismiss or abstain because of the action in tribal court.  Plaintiff contends that
23  the tribal court has no jurisdiction over an action brought by a non-Indian against a non-
24  Indian.  Plaintiff also contends that the issue is clear enough such that exhaustion is not
25  required.

26  "[W]hether a tribal court has adjudicative authority over nonmembers is a federal
27  question."  <u>Plains Commerce Bank v. Long Family Land & Cattle Co., Inc.</u>, 554 U.S. 316,

28  - 2 -

1   324, 128 S. Ct. 2709, 2716 (2008).  Thus, it is plain that we have subject matter jurisdiction

2   under 28 U.S.C. § 1331.  Whether we should exercise that jurisdiction at this time is

3   dependent upon the clarity of the underlying claim and whether tribal exhaustion would serve

4   a purpose other than delay.  Nevada v. Hicks, 533 U.S. 353, 369, 121 S. Ct. 2304, 2315

5   (2001).  If it is clear that the tribal court has no jurisdiction, exhaustion would serve no

6   purpose other than delay.  Id.  See also Strate v. A-1 Contractors, 520 U.S. 438, 459 n.14,

7   117 S. Ct. 1404, 1416 n.14 (1997) ("when tribal-court jurisdiction over an action such as this

8   one is challenged in federal court, the otherwise applicable exhaustion requirement must give

9   way, for it would serve no purpose other than delay.") (Internal citation omitted).  Thus, in

10  order to determine whether plaintiff must first litigate its federal question in tribal court, we

11  must examine the merits.  If it is plain that the tribal court is without jurisdiction, plaintiff

12  will be subjected to needless delay and expense for no countervailing purpose. Plaintiff

13  claims the federal right to be free of tribal jurisdiction.  It would be anomalous indeed to

14  require plaintiff to first suffer the loss of the very right for which it seeks protection (to be

15  free of tribal jurisdiction) before affording an opportunity to protect its right.

16          To this day, the Supreme Court has "never held that a tribal court had jurisdiction over

17  a nonmember defendant."  Hicks, 533 U.S. at 358 n.2, 121 S. Ct. at 2309 n.2.  This speaks

18  volumes.  We begin with Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S. Ct. 1011

19  (1978), which held that a tribal court has no criminal jurisdiction over a non-Indian because

20  that would be inconsistent with the tribe's status.  The Court stated that the tribe's assertion

21  of authority over a non-Indian ignored the fact that there exists within the United States but

22  two sovereigns: the United States and the states.  Id. at 211, 98 S. Ct. at 1022.  And, in the

23  companion case of United States v. Wheeler, 435 U.S. 313, 98 S. Ct.1079 (1978), the Court

24  acknowledged that the self-governing powers of tribes "involve only the relations among

25  members of a tribe" and that divestiture of sovereignty has occurred with respect to "the

26  relations between an Indian tribe and nonmembers of the tribe. " Id. at 326, 98 S. Ct. at 1087-

27  88 (emphasis added).

28                                      - 3 -

1   This basic framework is not limited to criminal jurisdiction.  The Court expressly

2   quoted and relied on Oliphant and Wheeler in addressing the civil regulatory power of a tribe

3   over non-Indians in Montana v. United States, 450 U.S. 544, 564, 101 S.Ct. 1245, 1257

4   (1981).  The Court specifically stated that "[t]hough Oliphant only determined inherent tribal

5   authority in criminal matters, the principles on which it relied support the general proposition

6   that the inherent sovereign powers of an Indian tribe do not extend to the activities of

7   nonmembers of the tribe."  Id. at 565, 101 S.Ct. at 1258.  The Court then acknowledged two

8   exceptions: "some forms of civil jurisdiction over non-Indians on their reservations, even on

9   non-Indian fee lands," (1) "who enter consensual relationships with the tribe or its members"

10  or (2) whose conduct "threatens or has some direct effect on the political integrity, the

11  economic security or the health or welfare of the tribe."  Id. at 565-66, 101 S. Ct. at 1258

12  (emphasis added).

13      Relying on Water Wheel Camp Recreational Area, Inc. v. Larance, 642 F. 3d 802 (9th

14  Cir. 2011), Stover contends that the presumption against tribal jurisdiction and the Montana

15  exceptions apply only to fee patented land within the boundaries of a reservation.  But this

16  contention cannot be squared with the Court's post-Montana decisions.  In Strate, the Court

17  described Montana as "the pathmarking case concerning tribal civil authority over

18  nonmembers."  520 U.S. at 445, 117 S.Ct. at 1409.  It could hardly be pathmarking if it did

19  not apply to tribal land within a reservation.  And in Hicks, the Court stated that "Indian

20  tribes' regulatory authority over nonmembers is governed by the principles set forth in

21  Montana which we have called the 'pathmarking case' on the subject." 533 U.S. at 358, 121

22  S. Ct. at 2309 (internal citations omitted).  The Court expressly rejected the contention that

23  because Hicks's home was on tribal land Montana was distinguishable. 533 U.S. at 359, 121

24  S. Ct. at 2310 (citation omitted).  Indeed, the Court read the use of the word "reservation" in

25  Montana to imply "that the general rule of Montana applies to both Indian and non-Indian

26  land."  Id. at 359-60, 121 S. Ct. at 2310.

27      The Court's most recent pronouncement leaves no ambiguity.  The Court said that

28

"tribes do not, as a general matter, possess authority over non-Indians who come within their borders," Plains, 554 U.S. at 328, 128 S. Ct. at 2718, and that "the general rule [of Montana and Oliphant] restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians." Id. at 328, 128 S. Ct. at 2719 (emphasis added).  If there were any doubt about this, the Court then relied on Montana's general proposition to state that "efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are 'presumptively invalid.'" Id. at 330, 128 S. Ct. at 2720.  Nor can a tribe's adjudicative jurisdiction exceed its legislative jurisdiction.  Id.  Unless words are infinitely elastic, one cannot limit Montana to the activities of non-Indians on fee patented land.  This is so because, as the Court noted, subjecting non-Indians to the jurisdiction of a tribal court without their consent would subject them to an entity outside the Constitution.  Id. at 337, 128 S. Ct. at 2724.  Government with the consent of the governed is everything in America.

To the extent that the *per curiam* opinion in Water Wheel departs from Supreme Court jurisprudence in the area of Federal Indian Law, we are constrained by the Supremacy Clause, Art. VI, and Article III ("one supreme Court") to follow the Supreme Court.  See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S. Ct. 1343, 1344 (1983).  We thus apply Montana to this case.  Ironically, even if Montana did not apply to reservation land, we would fall back on Oliphant and Wheeler to conclude that there is no tribal court jurisdiction over non-Indians on reservation land.  See Frederick J. Martone, Of Power and Purpose, 54 Notre Dame L. Rev. 829, 836-38 (1979) (reviewing the application of Oliphant and Wheeler in the civil context, concluding that these cases establish that Indian tribes lack jurisdiction over non-Indians).

It is undisputed that plaintiff is a non-Indian limited partnership, and that Stover's injuries occurred on the reservation.  We are therefore presented with the classic Montana query.  Beginning with the presumption that the tribal court lacks jurisdiction over a non-Indian's actions, we assess whether either of Montana's exceptions apply.

The first <u>Montana</u> exception approves tribal regulation "through taxation, licensing, or other means" over a non-Indian's activities when the non-Indian has entered into a "consensual relationship[] with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."  <u>Montana</u>, 450 U.S. at 565, 101 S. Ct. at 1258. Plaintiff acknowledges that it agreed to and did deliver its products to the On-Auk-Mor for sale.  Although the exact nature of the relationship is unclear, we conclude that a consensual relationship as defined in <u>Montana</u> is present between plaintiff and On-Auk-Mor, whether or not a written contract exists.  According to Stover, the existence of the consensual relationship is all that is needed for the first <u>Montana</u> exception to apply.  We disagree. There is no consensual relationship between plaintiff and Stover.

The justifications for tribal jurisdiction must be considered when assessing whether jurisdiction exists.  This is because a tribal court's power is limited to that which is needed to (1) protect self-government, and (2) "control internal relations."  <u>Id.</u> at 564, 101 S. Ct. at 1258.  The <u>Montana</u> exceptions emerge from the justifications for recognizing tribal power.

> Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight.  While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations.  The regulations we have approved under <u>Montana</u> all flow directly from these limited sovereign interests.

<u>Plains</u>, 554 U.S. at 335, 128 S. Ct. at 2723.  Also important to the analysis is the notion of consent.  Non-Indian defendants, after all, are often United States citizens.  See <u>United States v. Lara</u>, 541 U.S. 193, 212, 124 S. Ct. 1628, 1640 (2004) (Kennedy, J., concurring); <u>see also</u> <u>Duro v. Reina</u>, 495 U.S. 676, 692-94, 110 S. Ct. 2053, 2063-64 (1990) (superceded by statute on other grounds).  These defendants do not lose their citizenship or renounce its protections simply by stepping foot on an Indian reservation.  Non-Indians, by virtue of their non-member status, do not play any role in tribal government and "have no say" in tribal laws and regulations.  <u>Plains</u>, 554 U.S. at 337, 128 S. Ct. at 2724.  "Consequently, those laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented,

1   either expressly or by his actions." Id.  But consent alone is not enough.  "Even then, the

2   regulation must stem from the tribe's inherent sovereign authority to set conditions on entry,

3   preserve tribal self-government, or control internal relations." Id.

4        In Plains, the Court noted that a non-Indian defendant bank might have reasonably

5   thought that its commercial dealings with an Indian company "could trigger tribal authority

6   to regulate those transactions." Id. at 338, 128 S. Ct. at 2725.  But Plains held there was "no

7   reason" that the bank should have thought that its business dealings would permit the tribe

8   to regulate the sale of bank-owned land.  Id.  Here, Stover's tort claim is unrelated to

9   plaintiff's consensual relationship with a tribe member to deliver items for sale to a tribal

10  store.  There is no reason why a non-Indian company should reasonably have expected its

11  delivery of food to an Indian store would subject it to a negligence suit by a non-Indian

12  plaintiff governed not by United States law, but by tribal laws and procedures.  To find

13  otherwise would expand tribal power over non-members beyond its recognized limits of that

14  necessary to preserve self-governance and control of internal relations.

15       Stover next argues that Montana's second exception applies.  Tribal jurisdiction exists

16  when a non-Indian's conduct on reservation land "threatens or has some direct effect on the

17  political integrity, the economic security, or the health or welfare of the tribe." Montana,

18  450 U.S. at 566, 101 S. Ct. at 1258.  The non-Indian's conduct must not only injure the tribe,

19  "it must 'imperil the subsistence' of the tribal community." Plains, 554 U.S. at 341, 128 S.

20  Ct. at 2726 (citation omitted).  One commentator suggested that the assertion of tribal

21  jurisdiction would have to be "necessary to avert catastrophic consequences" in order for the

22  second exception to apply. Id. (citation omitted).

23       Stover argues that negligent conduct in leaving a box on the floor has a direct effect

24  on the political integrity of the Salt River Pima-Maricopa Tribe.  According to Stover, "[t]he

25  Tribe's political integrity is threatened when a United States court undercuts the jurisdiction

26  and power of the Tribal Court system." Reply to Mot. to Dismiss at 5-6.  But this argument

27  reflects an erroneous understanding of Indian Law and an unwillingness to accept the

28                                          - 7 -

1    limitations imposed on tribal jurisdiction.  An injury to a non-Indian caused by another non-
2    Indian cannot conceivably be called catastrophic for tribal self-government.  To the contrary,
3    it does not affect the tribe at all.

4         Stover's argument that plaintiff's negligence affected the health and welfare of every
5    tribe member is equally incredible.  Stover has not alleged that the errant box injured anyone
6    other than herself.  And she has not alleged that plaintiff's mishandling of the box is part of
7    a pattern of negligent conduct on tribal land.  Instead, an isolated instance of a non-Indian's
8    negligence that injured a non-Indian cannot seriously be said to imperil the health and
9    welfare of the tribe.

10        In sum, it is clear that Stover's allegations against plaintiff do not fall under either of
11   the two <u>Montana</u> exceptions.  Because we hold that tribal jurisdiction is clearly lacking and
12   exhaustion would merely cause delay, plaintiff was not required to exhaust tribal court
13   remedies.  Comity does not require deference to a court which has no jurisdiction.  Stover's
14   motion to dismiss is denied.

15                        **III. Plaintiff's Motion for Summary Judgment**

16        Plaintiff moves for summary judgment on its requested injunctive and declaratory
17   relief.  In addition, plaintiff moves to strike Stover's responses to plaintiff's statement of facts,
18   arguing that Stover failed to comply with LRCiv  56.1(b).  Stover moves to amend her
19   statement of facts, pointing out that plaintiff itself failed to comply with LRCiv 56.1(b) in
20   responding to Stover's statement of facts filed in support of her motion for summary
21   judgment.  We note that both parties failed to comply with various aspects of LRCiv 56.1 in
22   their summary judgment briefings, including failing to reference specific admissible portions
23   of the record that support a fact and failing to support assertions in their memoranda of law
24   with citations to the specific paragraph in the statement of facts on which the parties relied.
25   Despite this non-compliance, the material facts are undisputed.  Plaintiff's motion to strike
26   is denied and Stover's motion to amend her statement of facts is granted.

27        We turn to plaintiff's request for injunctive relief from the pending tribal court
28                                        - 8 -

litigation.  A party is entitled to permanent injunctive relief if it can show (1) an irreparable injury; (2) an inadequate remedy at law to compensate the injury; (3) an injunction is warranted after balancing the hardships between the parties; and (4) the public interest would not be harmed by granting the injunction.  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).  Stover does not dispute plaintiff's argument that it has met all requirements for injunctive relief, but relies instead on her contention that the tribal court has jurisdiction over her claim against plaintiff.

We conclude that all four requirements for permanent injunctive relief are met. Plaintiff will continue to suffer irreparable harm if forced to litigate in tribal court.  If Stover's action against plaintiff proceeds in tribal court, plaintiff will be subjected to litigation in a forum which does not have jurisdiction.  Plaintiff will be required to present its jurisdictional challenge at the tribal trial court level and possibly in appellate tribal proceedings, and must retain specific tribal advocates to litigate.  Plaintiff will be forced to engage in potentially lengthy litigation, all to defend itself in a forum that lacks jurisdiction. Plaintiff would then be required to bring another action in federal court, presenting the same arguments it has already made here.  Although plaintiff did not specifically address the inadequacy of its remedy at law, we note that a damages action against Stover for suing plaintiff in tribal court is not only inadequate, it is likely unavailable.  Third, the balance of hardships tips in plaintiff's favor.  Granting an injunction will not prevent Stover from pressing her claim against plaintiff in courts of competent jurisdiction.  It will not prevent Stover from continuing to prosecute her case against Montiel and On-Auk-Mor in tribal court.  It will simply remove plaintiff's burden of defending itself in an improper forum. Finally, the public interest is not advanced by having a court that lacks jurisdiction determine a party's legal rights.  We therefore grant plaintiff's request for injunctive relief against Stover.

Plaintiff seeks a declaration that (1) Stover's tort action against plaintiff be adjudicated in this court; (2) Stover's claims against plaintiff are barred by res judicata; and (3) Stover's

1  claims against plaintiff are barred by the two-year statute of limitations pursuant to A.R.S.

2  § 12-542.  Under the Declaratory Judgment Act, a district court has discretion to decide

3  whether to maintain jurisdiction over a declaratory action.  See 28 U.S.C. § 2201(a); Allstate

4  Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011).  Having adjudicated the one federal

5  question in this case - whether the tribal court has jurisdiction over Stover's claim - we are

6  left with plaintiff's request for declaratory relief concerning a state-law negligence claim.  We

7  exercise our discretion and decline to maintain jurisdiction over the declaratory action.  State

8  courts are the best place to adjudicate state law claims against non-Indian parties.

9  **IV.  Stover's Cross-Motion for Summary Judgment**

10  Stover's cross-motion duplicates her motion to dismiss.  Because we have already

11  concluded that the tribal court lacks jurisdiction over Stover's tort action against plaintiff,

12  Stover's cross-motion for summary judgment is denied.

13  **V. Montiel and On-Auk-Mor's Motion to Dismiss**

14  Montiel and On-Auk-Mor move for dismissal for lack of personal and subject matter

15  jurisdiction.  They argue that because Montiel is a tribe member and owns the On-Auk-Mor

16  (where Stover was injured), the tribal court has jurisdiction over them.  We agree that the

17  tribal court is the proper forum for Stover to assert her tort claims against Montiel and On-

18  Auk-Mor.  See Plains, 554 U.S. at 327-28, 128 S. Ct. at 2718-19 (discussing tribal authority

19  to govern its own members' conduct).  Thus, there is no reason for these defendants to be

20  present in this action, which is limited to plaintiff's objections to Stover's claims against

21  plaintiff in tribal court.  Accordingly, we grant Montiel and On-Auk-Mor's motion to dismiss.

22

23  **VI. Salt River Pima-Maricopa Indian Community Court**

24  There is no evidence that the Salt River Pima-Maricopa Indian Community Court has

25  been served.  Under Rule 4(m), Fed. R. Civ. P., a defendant must be served within 120 days

26  after the complaint is filed.  This action was filed on July 8, 2011.  The deadline for service

27  has passed and plaintiff has neither moved for an extension nor shown good cause for the

28  - 10 -

1    failure to serve.  We therefore dismiss the Salt River Pima-Maricopa Indian Community
2    Court from this action.

3                                    **VII. Conclusion**

4        **IT IS ORDERED DISMISSING** defendant Salt River Pima-Maricopa Indian
5    Community Court without prejudice.

6        **IT IS ORDERED DENYING** Stover's motion to dismiss for lack of jurisdiction (doc.
7    13).

8        **IT IS ORDERED DENYING** plaintiff's motion to strike (doc. 17).

9        **IT IS ORDERED GRANTING** Stover's motion to amend her statement of facts
10   (doc. 20).

11       **IT IS ORDERED DENYING** Stover's cross-motion for summary judgment (doc.
12   14).

13       **IT IS ORDERED GRANTING** Montiel and On-Auk-Mor Trading Center's motion
14   to dismiss for lack of personal and subject matter jurisdiction (doc. 23).

15       **IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiff's
16   motion for summary judgment  (doc. 7).  Plaintiff's request for injunctive relief is
17   **GRANTED**.  **IT IS ORDERED** that, except for voluntarily dismissing her complaint,
18   Rebecca Stover is permanently enjoined from prosecuting, taking action, or conducting any
19   proceedings against Rolling Frito-Lay Sales L.P. in tribal court, including Salt River Pima-
20   Maricopa Community Court Action C-11-0012.  Plaintiff's requests for declaratory relief are
21   **DENIED** without prejudice.

22       Because we decline to exercise jurisdiction over plaintiff's declaratory action, this case
23   is at an end.  The Clerk shall enter judgment.

24       DATED this 26th day of January, 2012.

25

26       _Frederick J. Martone_
27                    Frederick J. Martone
                      United States District Judge

28                              - 11 -